# REPORTS OF CASES

DETERMINED IN

# THE SUPREME · COURT

OF THE

# STATE OF UTAH.

## IN RE ATWOOD'S ESTATE.

WILL—OMISSION OF DEVISEE—LEGAL PRESUMPTION—ORAL EVI-
DENCE—COMPETENCY OF WITNESS.

1. In an instance under section 2677, Comp. Laws, where a testa-
tor failed to provide in his will for one of his children, the
statute presumes that the omission was not intentional.

2 The presumption raised by the statute that the omission by a
testator to provide for a child was not intentional may be
rebutted by extrinsic evidence, whether of declarations of
the testator or collateral facts.

3. The devisees, under the law of 1894, amending subdivision 3,
§ 3877, Comp. Laws, 1888, are not competent witnesses
against an omitted child.

(No. 690. Decided July 18, 1896.)

Appeal from the district court of the Third judicial
district, Territory of Utah. Hon. S. A. Merritt, *Judge.*

Petition by Florence Atwood, by her guardian, Amelia A. Sutton, in the matter of the estate of Millen Atwood, deceased. From an order granting the petition, executors and others appeal. *Reversed.*

*Richards & Richards,* for appellants.

That the intention of the testator to omit to provide for his children may be proven by parol evidence, is established by the decision of the supreme court of the United States in the case of *Coulam* v. *Doull,* 133 U. S. 216. The court there holds that:

Under the statutes of Utah, when any testator shall omit to provide in his or her will for any of his or her children or for the issue of any deceased child, unless it shall appear that such omission was intentional, such child or the issue of such child shall have the same share in the estate of the testator as if he or she had died intestate, and extrinsic evidence is admissible to show that the testator's omission to provide for a child was intentional. *Coulam* v. *Doull,* 133 U. S. 216.

In the case last cited the supreme court declares that inasumch as our statute came from Massachusetts the rule of construction adopted by the courts of that state must be applied to it, and that the settled law of Massachusetts is established by the cases of *Wilson* v. *Fosket,* 6 Met. 400; *Converse* v. *Wales,* 4 Allen 512; *Buckley* v. *Gerard,* 123 Mass. 8.

*The testimony offered by the estate was competent, including the declarations of the deceased in relation to his intention not to provide for the petitioner.* This is the settled rule in Massachusetts, as declared by the supreme court of the United States, and evidenced by the following cases: *Converse* v. *Wales,* 4 Allen 512; *Buckley* v. *Gerard,* 123 Mass. 8; *Coulam* v. *Doull,* 133 U. S. 216, 4 Utah 276; *Brady* v. *Cubitt,* 1 Doug. 31; *Brush* v. *Wilkins,* 4 Johns. Ch. 506.

But it is contended that the statute was adopted from California and carries with it the construction placed upon it by the courts of that State.    Neither the supreme court of Utah nor the supreme court of the United States concur in that view.    In the Coulam case, page 231, the latter court say:

"It is contended that the statutory provision in question was copied from that of California, and that we are bound by the construction previously put upon it by the courts of the latter state.   *   *   *   The rule ordinarily followed in construing statutes is to adopt the construction of the courts of the country by whose legislation the statute was originally adopted, but we are not constrained to apply that rule in this instance.   The original source of the statute is to be found in the legislation of Massachusetts.   The supreme court of California declined to treat the received construction in Massachusetts as accompanying the statute and forming an integral part of it upon a distinction which we do not regard as well drawn.   That construction commends itself to our judgment, and we hold that the supreme court of the territory properly applied it."

*Brown, Henderson & King,* for respondent.

It is true that in the Coulam case in the supreme court of the United States, that court held under the former statute of 1876 that the courts of this territory were not bound to follow the California decision because the statute was one which came originally from Massachusetts, and that the Massachusetts decisions would govern instead.    The former statute under which the Coulam case arose, was only a single section, which was like a section of both the Massachusetts and California statutes, but it was uncertain which code or which State

the law of 1876 undertook to follow, consequently the supreme court of the United States say that the decisions of the California court are no more binding than the decisions of the Massachusetts court, but since that time the present statute has been borrowed from California *verbatim et literatim.* To verify this we refer the court to Deering's Civil Code, being the second volume of Deering's Annotated Statutes of California (not the code of Civil Procedure) commencing at sec. 1270 and continuing to and including sec. 1377, pages 239 to 257.

You will there see by comparing the present statute under which this case arises, adopted in 1885, and the statute of California are alike in every particular. That the amendments to the California statute which had been adopted up to 1885 were copied right into our law, showing clearly the intent of the legislature of this territory to adopt not the Massachusetts code, but the California code, thereby bringing this within the well understood rule that when one state adopts a statute from another state, when it is determined what state they borrowed it from, they take also the received and enunciated construction of the statute along with it. *Coulton* v. *Stafford*, 48 Fed. Rep. 266.

And this statute was adopted by this territory after both the Coulam and Gerard cases had been tried, and no doubt with the express intent of adopting the California construction of it. In the present statute there are many expressions and provisions that were not in the statute of 1876, which shows it to be the clear intent and policy not to permit oral declarations when a will is under consideration, and this is clearly apparent and expressly provided for.

In the Stevens case, 83 Cal. 322, the court will see a review of the decisions holding with the California case

in other states where they have similar statutes, but not statutes exactly like the California statute.

ZANE, C. J.:

It appears from the evidence in this record that the late Millen Atwood, of Salt Lake county, made his last will on the 30th day of September, 1890, in which he devised all his real estate, and bequeathed all his personal property remaining after the payment of his just debts and his funeral expenses, to his wife, Relief C. Atwood, and to his three children, Millen M. Atwood, Abbie Angenette Sermon, and Rosalie Esther Kelch; and that he died on the 7th day of December, of the same year, possessed of real and personal property; and that his widow, Relief, and his children named, are still living. It also appears that the will was duly probated, and that Florence Atwood, by her guardian, filed her petition in the office of the clerk of the probate court of said county on the 30th day of March, 1892, in which she alleged, with other facts, that she was of the age of 15 years; that she was a daughter and heir at law of the testator; that he omitted to provide for her in his will; and that it did not appear that such omission was intentional. Upon final distribution of the estate, she prayed that the same portion thereof might be awarded to her that she would have succeeded to if the testator had died intestate. The executors, devisees, and legatees named in the will filed an answer to the petition, denying all its material allegations. This is an appeal from a decree granting the prayer of the above petition.

The principal question presented upon this appeal for our consideration and decision arises upon the ruling of the lower court excluding declarations of the testator made before, about the time of, and after, he executed

his will, offered to prove that the omission to provide for the petitioner, Florence Atwood, therein, was intentional. The petitioner bases her claims upon section 2677, Comp. Laws Utah 1888, viz.: "When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share of the estate of the testator as if he had died intestate, and succeeds thereto as provided in the preceding section." The meaning of this section is clear. It declares, in effect, that the intent not to provide for a child, or the issue of one, shall not be inferred from the omission to make such provision in his will though he expressly gives all his estate to heirs or other persons named. The statute presumes that he did not intend to omit to provide for a child not named, unless it otherwise appears that he did. The statute presumes that the omission was from mental incapacity, or from inadvertence or mistake. The presumption of a want of intention is contrary to the intent which the language of the will expresses, viz.: to give all his estate to the persons named. If, in construing the language of the will in the light of all the circumstances under which it was made, the court can say it provides for the child, the statute has no application. On the contrary, if, after construing its language under all such circumstances, the lower court can say the child is omitted, the statute does apply, and raises the presumption that the omission was not intentional. The petitioner insists that the intention not to provide, as well as the omission to provide, must appear from the language of the instrument; while the appellants claim that the intent to omit may be shown by parol evidence. The statute does not say from what the intention to omit shall appear. The phrase, "unless it appears that such omission

was intentional," must be held to signify that the intent to omit must appear according to the rules of evidence, not contrary to them; but the statute does not indicate the means by which such intent must appear. As a part of the science of the law, rules have been established by which to determine the competency, the relevancy, and the materiality of evidence offered to prove or disprove disputed facts. Such facts can only be established in courts of justice by such means as the rules of evidence permit.

The language of the testator's will gives his entire estate, after the payment of his debts, to his wife and the three children named. No mention or reference to any other heir is made in it. While it is true that no reference is made in the will to the petitioner, Florence, and that there is evidence tending to prove that she was not the testator's child, in our opinion the weight of the evidence supports the finding of the trial court that she was his daughter. The law quoted above raises the presumption, from the absence of any reference to her in the will, that the omission was not intentional; but the presumption is not conclusive, and it may be overcome by legitimate evidence. It is to overcome this presumption that evidence is admissible in the first instance and afterwards to support it. So that the evidence is not admitted to aid the lower court in the construction of the will. It is admitted solely to rebut the presumption which the law raises. It is admitted for the sole purpose of rebutting a *prima facie* presumption raised by the statute, contrary to the intent which the language of the will expresses. The statute presumes that the testator did not mean what he said, while the evidence offered says he did. Taylor, in his work on Evidence, distinguishes the rule regulating the admision of parol evidence to rebut legal presumptions from those excluding

such testimony to aid the court in the construction of
wills or contracts, as follows: "With the view of clearly
understanding the subject under discussion, it is essen-
tial to distinguish between mere legal presumptions and
rules of construction, because, while the former may be
rebutted, and, if rebutted, supported also by parol evi-
dence, no evidence can be received on either side if the
court, by construction, can arrive at a conclusion respect-
ing the meaning of the instrument." 2 Tayl. Ev. § 1231.
The statute quoted does not state a rule of construction,
but a rule of presumption. It does not contradict or vary
the language of the will or its meaning. It is offered to
show that the testator meant what his language ex-
pressed. The evidence is offered to rebut the presump-
tion which the statute raises that he did not mean what
he said.

In the discussion of the rules respecting the admission
of extrinsic evidence as to wills, Abbott says: "The con-
siderations to which I have adverted, however, it will be
seen, do not militate against evidence impeaching or dis-
proving the validity of the testamentary act nor, on the
other hand, against evidence tending to show that the
intention was really just what it expressed on the face
of the will." Abb. Tr. Ev. p. 132. We are of the opinion
that the presumption raised by the statute, that the
omission by a testator to provide for any of his children
was not intentional, may be rebutted by extrinsic evi-
dence, whether of declarations of the testator, or col-
lateral facts showing the intention of the testator to
have been that which the language of the will expresses.
Tayl. Ev. pp. 1043-1046; 1 Greenl. Ev. § 299. The law
was so determined by the supreme court of the late terri-
tory of Utah, under a statute substantially the same as
the one quoted above, in the case of *Coulam* v. *Doull*,
4 Utah, 267, and affirmed by the supreme court of the

United States (133 U. S. 216). The same doctrine is announced in *Converse* v. *Wales,* 4 Allen 512. *Lorioux* v. *Keller,* 5 Iowa 196; *Wilson* v. *Fosket,* 6 Metc. (Mass.) 400; *Buckley* v. *Gerard,* 123 Mass. 8.

On the trial of the issues raised by the petition and answer in this proceeding, Relief C. Atwood, the widow of the deceased, devisee and legatee under the will, and Millen M. Atwood, Abbie A. Sermon, and Rosalie E. Kelch, children of the testator, also devisees and legatees, testified to certain conversations with the testator, before and after the will was executed, in which he stated that the petitioner, Florence, was not his child, and that he did not intend to provide for her in his will. These statements were excluded by the court, and the respondents to the petition excepted to the ruling of the court, and assign it as error. This assignment of error raises the question: Were such legatees and devisees competent witnesses, under "An act amending subdivision 3 of section 3877 of the Compiled Laws of Utah 1888, relating to witnesses," in force March 7, 1894? Subdivision 3 of section 3877 of the Laws of 1888, which the act of March 7, 1894, proposes to amend, is as follows: "The following persons cannot be witnesses: *  *  *  Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person, and equally within the knowledge of both the witness and the deceased person." This subdivision applied only to contentions between estates of deceased persons and other parties, not to contentions between heirs, legatees, or devisees as to their respective interests in such estates,

and rights thereto. While the act of 1894 professes to be an amendment of subdivision 3 of the statute of 1888, it covers its entire subject, and is more comprehensive. It is as follows: "A party to any civil action, suit, or proceeding, and any person directly interested in the event thereof, and any person from, through, or under whom such party or interested person derives his interest or title, or any part thereof, when the adverse party in such action, suit or proceeding claims or opposes, sues or defends as guardian of any insane or incompetent person, or as the executor or administrator, heir, legatee or. devisee of any deceased person, or as guardian, or assignee or grantee, directly or remotely, of such heir, legatee or devisee as to any statement by, or transaction with, such deceased, insane or incompetent person, or matter of fact whatever, which must have been equally within the knowledge of both witness and such insane, incompetent or deceased person, unless such witness be called to testify thereto by such adverse party, so claiming or opposing, suing or defending in such action, suit or proceeding." This act may be more easily understood with respect to the case in hand by omitting a part of its language: "A party to any * * * proceeding, * * * when the adverse party claims or opposes * * * as heir, legatee or devisee of any deceased person, * * * person as to any statement by such deceased * * * person * * * which must have been equally within the knowledge of * * * the witness and such * * * deceased person, unless such witness be called by such adverse party."

The petitioner was heir. The parties opposing were heirs, legatees, and devisees. The statements were by the testator, and expressed an intention not to provide for the petitioner in his will, and were, in effect, favor-

able to his heirs named in the will, and unfavorable to the petitioner. Such intent was not equally within the knowledge of the witnesses and the deceased testator, it is true. But the witnesses belonged to the class of persons named by the statute as disqualified; and they appear to be within the reason of the rule of exclusion established by the statute, because they were testifying to statements of a deceased person made in their favor. There is no other means of showing what the testator did say, or of contradicting the witnesses. We are of opinion that there was no error in the ruling of the court in excluding the statements of the witnesses named above. We see no legitimate objection to the competency of the other witnesses called by the appellants, or to their testimony, because of irrelevancy or immateriality, or otherwise.

For the reasons stated, the decree of the court below is reversed, with costs, and that court is directed to grant a new trial.

MINER, J., and STREET, District Judge, concur.