(121 N. W. 614.)

---

GRACE D. HEDDERICH v. GUS M. HEDDERICH, JR.

Opinion filed September 23, 1909.

On petition for Rehearing November 12, 1909.

**Appeal and Error — Notice of Appeal — Appeal Bond — Appeal From Judgment.**

1. A notice of appeal from a final judgment is ineffectual to bring up for review an order made after judgment denying a motion for a new trial, where such notice merely recites that defendant appeals from the judgment, and asks for a review of such order on said appeal. Furthermore, the undertaking on appeal makes no reference to such order, and, following the rule recently announced by this court in Sucker State Drill Co. v. Brock, 120 N. W. 757, such attempted appeal, conceding that defendant attempted to take an appeal from the order, was wholly abortive.

2. Where a motion for a new trial is made and denied after judgment and the appeal is from the judgment alone, the order denying the motion is conclusive as to all matters passed upon by the trial court on such motion, except errors properly appearing upon the judgment roll, which errors may always be reviewed on the appeal from the judgment.

**Appeal and Error — Assignments of Error.**

3. Assignments of error, in order to be available to appellant, must be based upon rulings which are reviewable in this court. It is accordingly held that the assignments relating to alleged insufficiency of the evidence and challenging the correctness of the order denying the motion for a new trial cannot be considered on this appeal.

**Appeal and Error — Instructions — Assignment of Errors — Exception — Admission of Evidence.**

4. Assignments based on alleged erroneous instructions to the jury where no exceptions were saved to such instructions, and assignments predicated on alleged erroneous rulings on the admission or rejection of testimony, where such testimony is not material in view of the other facts found by the jury, will not be considered.

**Appeal and Error — Verdict of Jury — Immaterial Issues — Harmless Errors.**

5. In a proceeding to determine the validity of the last will and testament of one H., the jury, by their special verdict, among other things, found that the execution of such will was the free act and deed of the testator; that the same was not executed under or in consequence of any undue influence exerted upon testator's mind by any other person; that the interpleader, who claimed to be the lawful issue of the deceased and an Indian woman known as "Medicine," and the sole heir of such deceased, was intentionally omitted by the testator as a devisee or legatee under the will; and that at the date of the execution of such will the testator was of sound mind. Such findings had the effect of eliminating as immaterial all other contested issues; hence alleged errors predicated upon the court's action with reference thereto need not be considered.

**Trial — Jury — Direction of Answer to Interrogatory.**

6. The question as to whether the testator was of sound mind at the time of executing such will was submitted to the jury, and they reported their inability to agree as to the answer to be made, whereupon the court, on motion of respondent's counsel, directed an affirmative answer thereto. *Held* not error, as there is no evidence upon which the jury could properly have made a negative answer to such question.

**Appeal and Error — Admission of Evidence — Harmless Error.**

7. Certain assignments based upon alleged erroneous rulings on the admission of non-expert testimony as to the mental condition of the testator at the time of making the will are overruled, as such rulings, if erroneous, were not prejudicial for reasons stated in the opinion.

Appeal from District Court, Williams county, *Goss, J.*

· Petition by Grace D. Hedderich to the county court for the probate of the will of August M. Hedderich, deceased. The petition was opposed by Gus. M. Hedderich, Jr., and, from a judgment in proponent's favor, he appealed to the district court, where judgment was also rendered for proponent, and he appeals. Affirmed.

*Palda & Burke (John E. Greene,* of counsel), for appellant.

Jury must pass upon all the facts necessary to support a judgment. Moore v. Moore, 67 Tex. 293; Jenewein v. Town of Irving, 99 N. W. 346-348; Hardin v. Foster, 102 Ga. 180, (29 S. E. 174).

Failure to agree upon a material question is a mistrial, and case should be submitted to a new jury. Hardin v. Branner, 25 Ia. 364; Ry. Co. v. Reynolds, 8 Kans. 623; Clark et al, v. Weir, 14 Pac. 533; Redford v. Spokane St. Co., 36 Pac. 1085; Elliott v. Village of Graceville, 76 Minn., 430, 79 N. W. 503; Taylor v. Vandenberg, et al., 90 N. W. 142; Barstow v. Northern Assur. Co. of London, England, 72 N. W. 86; Clementson on Special Verdicts, 109.

*A. L. Knauf and Ball, Watson, Young & Lawrence* for respondent.

Failure to find on a fact in issue is harmless error when a finding in appellant's favor would not affect the judgment. Morrison v. Stone, et al., 37 Pac. 142; Blochman v. Spreckels, 67 Pac. 1061; Diefendorff v. Hopkins, 28 Pac. 265; Bush v. Maxwell, 48 N. W. 250; Ault v. Wheeler & Wilson Manuf'g Co., 11 N. W. 545; Schrubbe v. Connell, et al., 34 N. W. 503; Cooper v. Forgey et al., 42 N. E. 651.

Questions that can be answered but one way need not be submitted. Stringham v. Cook, et al., 44 N. W. 777; Weisel et al v. Spence, 18 N. W. 165; White v. Bailey, 14 Conn. 272; Johnson v. Ins. Co., 39 Mich. 33; Parmater v. State, 3 N. E. 382; Johnson v. Putnam, 95 Ind. 57; Glantz v. South Bend, 106 Ind. 305; 3 West Rep. 646; Spraker v. Armstrong, 79 Ind. 577; Indiana, B. & W. R. Co. v. Barnhart, 115 Ind. 399; 13 West. Rep. 425; Louisville, N. A. & C. R. Co. v. Buck, 116 Ind. 566; Louisville, New Albany & Chicago R. Co. v. Martha R. Hart et al., 4 L. R. A. 553.

Whatever is not found in a special verdict is considered as not existing. Thayer v. Society of United Brethren, 20 Pa. 60; Berks

County v. Jones, 21 Pa. 413 ; Pittsburg, Ft. W. & C. R. Co. v. Evans, 53 Pa. 250 ; Loew v. Stocker, 61 Pa. 347 ; Vansyckel v. Stewart, 77 Pa. 124 ; Lawrence v. Beaubien, 2 Bailey, 623, 23 Am. Dec. 155 ; 46 Cent. Dig., 2087 ; Jones v. Baird, 76 Ind. 164, and cases cited, 46 Cent Dig., 2088 ; Glantz v. City of South Bend 106 Ind. 305, 6 N. E. 632, 46 Cent. Dig., c., 2088 ; Cooper v. Forgey et al., 14 Ind. App. 151, 42 N. E. 651, 46 Cent. Dig., c. 2088.

FISK, J.  This litigation arose in the county court of Williams county, and involves the validity of the last will of one August M. Hedderich, deceased.  Plaintiff and respondent, the widow of the deceased, and who claims to be his sole heir and legatee, filed in such county court a petition praying for the probate of such will. The appellant, who claims to be the lawful issue of an alleged marriage between the deceased and one Pazutah, an Indian woman, known as "Medicine," was permitted to intervene in such probate proceedings.  By his petition in intervention appellant alleged the fact of such marriage on July 1, 1879, and that he is the lawful and sole issue thereof, having been born on March 25, 1880.  He also alleged, in substance, that deceased was induced to make such will through the undue influence of others, by the terms of which will he was wholly omitted and his name was not mentioned as a legatee, although, as alleged by him, he was the sole surviving heir at law of such testator ; also, that at the time of making such will the said testator was of unsound mind, and not mentally capable of making a will or of transacting ordinary business, and praying, among other things, that such will be refused probate, and that he be decreed to be the sole heir of the decedent.  The respondent answered, putting in issue all of the allegations of the petition, except the fact of the execution of the will by the deceased and the date of defendant's birth.  The issues thus framed were duly adjudicated in the county court, resulting in a judgment in plaintiff's favor upon each of such issues.  Upon appeal to the district court, a jury trial was demanded and had, which also resulted in a judgment in plaintiff's favor from which judgment this appeal is prosecuted.

Certain questions of practice are presented which require brief notice.  After the entry of judgment, a motion for new trial was made embracing all the grounds urged on the appeal from the judgment.  Such motion was denied, and it was the evident intent of appellant's counsel to appeal both from the judgment and from the order denying such motion.  It is very apparent, however, that the

attempted appeal from the order was ineffectual. The notice of appeal recites that defendant "appeals * * * from the judgment, * * * and that upon such appeal * * * defendant will ask for a review* * * of the order * * * overruling the motion * * * to set aside the verdict * * * and do grant a new trial thereof." The undertaking on appeal in no way refers to or mentions the order denying such new trial, but is merely an undertaking for the payment of the costs on the appeal from the judgment. Following the rule recently announced by this court in Sucker State Drill Co. v. Brock, 120 N. W. 757, the attempted appeal from the order must be held to be ineffectual. It is respondent's contention that in view of the fact that appellant urged on his motion for a new trial all the questions now urged on the appeal from the judgment, that the order denying such motion is, in effect, res judicata, and can be reviewed by this court only on an appeal from the order. Numerous cases are cited and relied upon in support of such contention, but we find none directly in point, and we have been unable, through an extended research, to find any authority for such a rule. The principal cases relied on are from Indiana, where they have a statute providing for a review by action in the trial court of judgments therein rendered. Such statutory review is not, as counsel contend, strictly analogous to our statutory motion for a new trial. See the article on Review in 18 Encyc. Pl. & Pr. 989-1052, for a full treatment of the subject. Even in the few states where such remedy exists a concurrent remedy by appeal is provided for by statute. While the writer's attention has not been directed to any authority expressly holding that an order denying a new trial is not conclusive as to errors apparent on the judgment roll, there are many authorities which inferentially so hold, and no doubt such is the correct rule. In Satterlee v. M. B. A, 15 N. D. 92, 106 N. W. 561, a motion for a new trial was made and denied after the entry of judgment. Such motion was made on the ground that the evidence was insufficient to justify the verdict, and also for errors of law occurring at the trial. An appeal was taken from the judgment alone, and the court assumed the right to pass upon the alleged errors of law. It is true that the question here raised was not suggested nor passed upon in that case. In Gade v. Collins et al., 8 S. D. 322, 66 N. W. 466, it was said: "unless the order denying or granting a new trial made after judgment is appealed from, either in connection with the appeal from the judgment or independently, the decision of the court below upon

the question of the sufficiency of the evidence to justify the findings or verdict will be res adjudicata." The court there at least inferentially held that as to other questions the decision of the court below on the motion for a new trial was not res judicata. To the same effect is the holding in Rogers v. King, 66 Barb. (N. Y.) 495, and many other authorities too numerous to mention. A proceeding for a new trial is held to be an independent proceeding not in the direct line of the judgment. As said by Chief Justice Sawyer in Spanagel v. Dellinger, 38 Cal. 284: "Under our system, from the entry of the verdict or filing of the findings of the court, the motion for new trial is a kind of episode, or in a certain sense a collateral proceeding—a proceeding not in the direct line of the judgment, for the judgment may be at once entered and even executed, while a motion for a new trial is pending in an independent line of proceeding, which ends in an order reviewable on an independent appeal. The motion may be heard and decided, and an appeal taken on its own independent record, while the proceedings on and subsequent to the judgment may be still regularly going on, and even an independent appeal taken in that line." As stated in 1 Spelling New Trial & Appellate Practice, section 14: "The foregoing is only true in those states where the order on motion for new trial is an appealable order." Our conclusion, therefore, is that the appeal from the judgment presents to this court the alleged errors of law occurring at the trial as preserved in the judgment roll, although such alleged errors were also urged as grounds for a new trial in the court below, and the order denying such new trial is unappealed from.

This brings us to a consideration of the questions presented on the appeal. Ninety-four alleged errors are assigned in appellant's brief, but, for reasons herein stated, it is necessary to notice only a few of them. Those relating to alleged insufficiency of the evidence and to the order denying appellant's motion for a new trial are, in view of our conclusion that no appeal was taken from such order, concededly unavailing to appellant. Assignments 1 to 10, inclusive, and the last assignment being numbered 94, are thus disposed of.

Assignments numbered 11 and 12 are deemed abandoned, as they are not discussed in the brief.

Assignments numbered 26 to 31, inclusive, 34, 35, 37 to 52, inclusive, 54, 58, 61, 62, 64, 65 and 66 relate to rulings on the admission of testimony relative to the alleged marriage of deceased to the Indian woman Medicine and the paternity of appellant. Such

rulings need not be noticed as, even if erroneous, they are not prejudicial in view of the findings of the jury upon the other issues which will be hereafter referred to.

Assignments numbered 67, 68 and 85 are concededly unavailing, as they are predicated upon alleged erroneous instructions to the jury, and no exceptions were taken to such instructions.

Assignments numbered 69 to 84, inclusive, relate to the action of the trial court in directing the jury to answer certain questions in the special verdict, but these assignments are expressly waived by appellant's counsel, and need not be considered.

Assignments numbered 87 to 93, inclusive, are based upon the action of the trial court in making certain findings of fact and order for judgment; such findings covering questions submitted to the jury by the special verdict and unanswered by such jury. In view of the facts which were found by the special verdict, the facts thus found by the trial court were wholly immaterial; hence their finding was nonprejudicial to appellant. Every fact material to the controversy was embraced in the special verdict as returned by the jury. In addition to the facts relating to the execution of the will, over which there was no dispute, the jury by the special verdict found that the execution of such will was the free act and deed of the testator; that such will was not executed under or in consequence of any undue influence exerted upon the mind of the testator by Grace D. Hedderich or any other person; that the omission to provide for the interpleader in such will was intentional upon the part of the testator; and that the testator, at the time he executed the will, was of sound mind. If the special verdict as thus returned is regular, and was properly returned, it effectually eliminates all other questions submitted to the jury in such special verdict as immaterial. Had the jury answered all the other questions in appellant's favor, such answers would not have changed the result in the least particular. In the light of the facts found, it was manifestly immaterial whether the deceased married the Indian woman Medicine or not, and it was likewise immaterial whether appellant was the lawful issue of such marriage. Appellant's counsel contend, among other things, that the special verdict was incomplete because question 10 was not answered by the jury. By the answer to this question the jury was asked to say whether the omission of the testator to provide for the interpleader in his will was caused by or in consequence of any undue influence exerted upon his mind by any person, but we

think such question was sufficiently answered by the answer to the preceding question wherein the jury found that such will was not executed under or in consequence of any undue influence exerted upon the mind of the deceased by Grace D. Hedderich or any other person.

Appellant's contention that a failure of the jury to agree upon a material question amounted to a mistrial is no doubt sound, but it has no application in view of our conclusion, as above stated, that the jury made answers to all the material and essential facts embraced in such special verdict.

The only assignments, therefore, which we are required to consider, are those relating to the rulings of the trial court in the admission of certain evidence of nonexperts as to the mental condition of the testator, being assignments numbered 13 to 17, inclusive, and 21 and 22, and assignment numbered 86, which relates to the lower court's action in directing the answer to the twelfth question in the special verdict. The latter assignment presents the most vital question in the case, and will be considered first.

Question 12 is as follows: "Was the deceased, August M. Hedderich, of sound mind when he executed the said will?" After the jury had deliberated for some time, they were returned into court, and announced that they were unable to agree as to the answer to question 12, as well as numerous other questions. Thereupon respondent's counsel moved the court to direct the jury to answer question 12 in the affirmative, which motion was granted over defendant's objection and exception. Appellant's counsel strenuously urge that such ruling was prejudicial error, as it deprived defendant of his right to a jury trial of such issue, and that the inability of the jury to answer such question from the evidence of necessity resulted in a mistrial. Counsel are no doubt correct in their contention, provided the record discloses a substantial conflict in the evidence upon the question of the testator's mental capacity at the time of the execution of the will. The fact, however, that the jury was unable to agree upon the answer to be made to such interrogatory, or that the attitude of the trial court in submitting such question disclosed that he at first considered it a question properly for the jury, is in no manner conclusive of the fact that there was such a conflict in the testimony as to require a submission of such issue to the jury. If, as a fact, the record is destitute of evidence from which the jury might rightfully find that the testator at the time

of the execution of the will was mentally incapable of disposing of his property understandingly, then it became the duty of the court to direct an affirmative answer to such question. The law presumes that the testator was of sound mind, and the burden rested on appellant to rebut such presumption. How stands the proof as disclosed by this record? Appellant's counsel assert, with apparent confidence, that there is a serious conflict in the testimony as to the testamentary capacity of the testator at the date of the execution of the will, but they fail to specifically point to the place or places in this record where such conflict appears. They merely refer in a general way to the testimony of certain witnesses and to certain documentary evidence in the form of letters written by the testator. The interpleader, for the purpose of proving such issue, introduced the testimony of four witnesses in addition to the letters aforesaid. These were Lydia and Bell Leonhardy, Miss Bell and Dr. Ringo.

The first three testified as to their employment in the hotel at Williston where the testator and his wife boarded for several years, and that Mrs. Hedderich was in the habit of assisting her husband at the table in cutting his meat, etc., but on cross-examination they each testified, in effect, that the testator's mind was perfectly normal so far as they observed. Dr. Ringo was introduced as a medical expert, and upon hypothetical questions he gave it as his opinion that the testator was suffering from general paresis. This witness graduated at a medical college in Chicago six years prior to giving his testimony, and he stated that he would not set himself up as a specialist on brain diseases. He had no acquaintance with the testator, and never met him. Among other things he testified: "From all the evidence here before me, in September and the fall of 1903 I think Mr. Hedderich was able to understand a business transaction. All I know is the evidence. I never saw Mr. Hedderich." We have examined the documentary evidence relied on, and find nothing therein from which the jury could rightfully say that the testator was not on September 14, 1903, fully in possession of his mental faculties. As we view the evidence relied on by the interpleader, it is entirely insufficient to require a submission of such issue to the jury, even when considered apart from the other evidence bearing on this question, which other evidence is well nigh conclusive as to the testamentary capacity of the testator at the date of the execution of the will. Every witness acquainted with the testator in his lifetime, and who testified upon the subject of his mental capacity, gave

it as their unqualified opinion that he was perfectly sane, and the record evidence, including letters written by the testator and book entries made by him, very strongly corroborate the oral testimony upon this feature of the case, and to our minds completely refute the contention of the interpleader. Appellant's counsel lay stress upon the fact that on the very day that the will was executed the testator and his wife left Williston and went to Chicago. Counsel state that they evidently went "for the express purpose of consulting a specialist in that city in regard to the physical as well as the mental condition of Mr. Hedderich;" but we are unable to discover anything in the evidence to warrant the belief that they went in search of medical advice as to any mental ailment. The evidence discloses that testator returned to Williston in the spring of 1901, where he remained until the middle of August; that he was at Williston for about five weeks in the summer of 1905, and, with the exception of a brief illness in August, he was quite well, and was not taken sick again until the last week of his life in April, 1906. From a consideration of the evidence we are forced to the conclusion that it was not error to direct an affirmative answer to question 12 of the special verdict, as no other answer could properly have been made thereto under the evidence.

Upon the question of the weight to be given the documentary evidence in cases such as this see Moore on Facts, section 14; Wilcoxon v. Wilcoxon, 165 Ill. 454, 46 N. E. 369. Even conceding the truth of all that is claimed by the interpleader with reference to his heirship, it would not follow that testator's action in omitting him from the will was under the peculiar facts at all unnatural or unreasonable, and, even if unnatural or unreasonable, such fact or facts, standing alone, would be insufficient to establish testator's lack of testamentary capacity. The rule is well established that it is only where there is other evidence of mental incapacity that an unnatural and unjust disposition is a circumstance which, taken in connection with such other evidence, may tend to show testamentary incapacity. See numerous cases cited in the note to Morgan v. Morgan, 13 Am. & Eng. Ann. Cas. 1044-1046.

The assignments relating to the rulings on the admission of the nonexpert testimony as to the mental condition of the testator require but brief notice. Such rulings were not prejudicial, even if erroneous, as, if such testimony should be entirely eliminated, the result must be the same—a total failure on appellant's part to establish affirmatively the issue of mental incompetency of the testator.

—32—

For the foregoing reasons, the judgment is affirmed. All concur, except ELLSWORTH, J., who took no part in the decision.

## ON PETITION FOR REHEARING.

FISK, J. A petition for a rehearing has been filed, in which it is strenuously contended that the issue as to the paternity of appellant is inseparably connected with that of whether the testator intentionally omitted to provide for him in the will, and that a finding against him as to the latter issue can be given no effect without also a finding in his favor as to the former. A very plausible and ingenious argument is presented in support of such contention, but, after mature deliberation, we are unable to concur in the views of counsel. It is no doubt true, as contended, that the omission referred to in Rev. Codes 1905, section 5119, relates to the omission to provide for any children or for the issue of any deceased child of the testator, but does it necessarily follow on this account that an intentional omission of the petitioner cannot be shown as a fact without first showing that he is a child of the testator? How is the latter fact at all material if, in the light of the facts, it appears that the testator, regardless of whether or not petitioner was his son, entertained no purpose or intent of recognizing him in his will? We think it must be said from the evidence that, whether interpleader was or was not the son of the deceased, it was the testator's intention to exclude him from any participation in the proceeds of his estate. In answering question 11 of the special verdict, the jury must have had in mind the contention of petitioner that he was a son of the testator as well as the denial of such fact by the testator. The primary question involved in the case was: Who was entitled under the will to receive the estate of deceased? The relationship of the petitioner to the testator was but a minor or incidental question.

The most that can be claimed by appellant is that, if the jury had found in his favor upon the question of paternity, such finding, together with the fact of his omission from the will, would have raised a mere prima facie presumption, contrary to the intent which the language of the will expresses, that the omission was not intentional. We are unable to see how appellant's rights are prejudicially affected by the fact that such prima facie presumption was not established by reason of the jury's failure to answer question 28 of the special verdict, when, from the testimony it clearly appears that

such presumption, if established, would have been fully and completely overcome.

The contenton of counsel in their petition for rehearing, in effect, that the evidence which would operate to overthrow the presumption, if established, can be given no weight until such presumption is first established, as a fact, does not appeal to us as sound. The foregoing opinion of the court in effect assumes, for the purposes of the point under consideration, that petitioner had established the requisite facts to create in his favor such prima facie presumption, to wit, that he is the lawful issue of deceased, and was omitted from the will. That such facts merely raise a prima facie presumption that he was not intentionally omitted, and that such presumption is rebuttable by evidence, extrinsic the will, is well established. In re Atwood's Estate, 14 Utah, 1, 45 Pac. 1036, 60 Am. St. Rep. 878; Coulam v. Doull, 133 U. S. 216, 10 Sup. Ct. 253, 33 L. Ed. 596, and cases cited. These authorities deal with a statute identically the same as our own.

Appellant's counsel urge that, in any event, the judgment in this case should be modified and the record so amended as to eliminate the findings of the trial court covering the omissions of the jury to answer the twenty-first, twenty-third, twenty-eighth and twenty-ninth questions in the special verdict; their contention being that there was a substantial conflict in the testimony as to the matters embraced in such questions, and hence the trial court clearly invaded the province of the jury in making such findings. In this counsel are clearly correct, and the judgment of the trial court will be modified accordingly.

Rehearing denied.