## ROBISON v. GULL et al.

No. 3114. Decided June 18, 1918. (173 Pac. 905.)

1. PLEADING—ANSWER AS DISCLAIMER. In action on note and to foreclose stock given as security, answer of defendants, one of original makers, and the administrator of the other, denying that the deceased maker left any property in M. county, *held* not a disclaimer of interest in the stock calling for dismissal of defendants' appeal on ground they had no interest in litigation, since all other issues had been disposed of. (Page 326.)

2. PLEADING—AMENDMENTS—DISCRETION OF COURT. Allowance of amendments to complaint was clearly within discretion of trial court. (Page 327.)

3. WITNESSES—ACTION AGAINST—TESTIMONY AS TO TRANSACTION WITH DECEASED—STATUTE. Under Comp. Laws 1907, section 3413, in action on note, and to foreclose stock pledged against original maker and administrator of another maker, deceased, plaintiff's testimony as to whether stock was delivered to him by deceased as a pledge, a fact equally within his knowledge and that of deceased, *held* inadmissible.[1] (Page 330.)

4. EXECUTORS AND ADMINISTRATORS—POSSESSION OF STOCK. In action on note, and to foreclose stock pledged, against original maker and administrator of another maker, deceased, plaintiff's possession of certificate of stock was not sufficient to sustain finding decedent pledged stock. (Page 331.)

Appeal from the District Court of Millard County, Fifth District; *Hon. D. H. Morris,* Judge.

Action by Almon Robison against William H. Gull and A. Ezra Gull, as administrator.

Judgment for plaintiff. Defendants appeal.

REVERSED, and cause remanded for new trial, with instructions.

*D. N. Straup* and *W. B. Higgins* for appellants.

*J. A. Melville* for respondent.

THURMAN, J.

This is an action to recover judgment on a promissory note and to foreclose a certificate of stock alleged to have been given as security. The action was originally commenced against William Gull and John Gull, makers of the note, but, it later being made to appear that John Gull died before the action was commenced, an administrator was appointed for

---

[1]*Wood* v. *Fox,* 8 Utah, 401, 32 Pac. 48; *Ewing* v. *White,* 8 Utah, 250, 30 Pac. 984; *Hennefer* v. *Hays,* 14 Utah, 324, 47 Pac. 90; *Clawson* v. *Wallace,* 16 Utah, 300, 52 Pac. 9; *Rasmussen* v. *Canal Co.,* 40 Utah, 371, 383, 121 Pac. 741.

his estate and substituted as a party by amendment to the complaint.

The complaint as amended was in the usual form of complaints in foreclosure proceedings, and, among other things, alleged in substance the execution and delivery of the note by both defendants and the assignment and delivery of the certificate of stock, as security, by John Gull. It then alleged that John Gull died in Millard county, Utah, leaving estate therein "consisting in part of said certificate of stock subject to the rights of plaintiff in and to the same as a pledge or mortgage of said stock." William Gull, and Ezra Gull, as administrator of said estate, answered the complaint, and, inter alia, denied that John Gull at the time of his death left any estate whatever in Millard county. At the trial of the case plaintiff expressly waived a deficiency judgment against both defendants and stipulated to rely solely upon the sale of the stock for the satisfaction of any judgment he might recover. Judgment was entered for plaintiff against both defendants for the amount due on the note and for a foreclosure of the security, specifying particularly that a deficiency judgment had been waived as to both defendants. Defendant William Gull at the trial admitted the due execution and delivery of the note and that the same had not been paid. The only material issue remaining was as to the assignment and delivery of the stock by John Gull as security for the note. The court found this issue in favor of the plaintiff and rendered judgment for foreclosure.

The hearing on appeal was had at the October term of this court, 1917. It was urged by respondent, both in his brief and in the oral argument, that in view of the pleadings and the proceedings at the trial it appeared that appellants had no interest in the matter in litigation, that there was no actual controversy between the parties, and that therefore this court was without jurisdiction and that the appeal should be dismissed. This contention was made by respondent because of the condition of the pleadings, in which it appeared, as above shown, that the defendants denied that John Gull at the time of his death left any estate in Millard county. In

view of this denial it was assumed that appellants disclaimed any interest in the stock in question, and, as the other questions in the case had been settled by stipulation or established by indubitable proof, there was, therefore, no issue remaining between the parties. This assumption of respondent was fortified by a finding of the trial court to the effect that neither of the defendants claimed any interest in the stock. While appellants earnestly resisted the dismissal of the appeal, they did but little to enlighten the court upon the question or to meet the contention made by respondent. In view of the pleadings and the findings of the court above referred to, this court, on the 28th day of January, 1918, entered an order dismissing the appeal. The following authorities were relied upon by the court: 2 Cyc. 533 and 628, and note; 2 R. C. L. 52; *Lawrence County's Appeal,* 67 Pa. 87; *McGregor* v. *Pearson,* 51 Wis. 122, 8 N. W. 101; *Burns* v. *Phinney,* 53 Minn. 431, 55 N. W. 540; *Glenn* v. *Reid et al.,* 74 Md. 238, 24 Atl. 155; *In re Blythe,* 108 Cal. 124, 41 Pac. 33; *First Nat. Bank* v. *Gibson,* 60 Neb. 767, 84 N. W. 259; *Braswell* v. *Mortgage Co.,* 110 Ga. 30, 35 S. E. 322.

Subsequently appellants applied for a rehearing, additional briefs were filed, the question was presented in a new and different light and more fully argued. The court, being in doubt as to the correctness of its former opinion dismissing the appeal, granted the application for a rehearing, and the same was reargued and submitted at the present term. Our former opinion has not been published. This, therefore, is the official opinion of the court, and the only one that will be published as such.

Upon the question as to whether the appeal should be dismissed the court deems it unnecessary to review the numerous authorities presented by the parties litigant. Both appellants and respondent have been diligent in their efforts to afford every possible aid and assistance to the court [1] in arriving at a correct and just conclusion. The authorities cited and heretofore relied on by the court, in a proper case, undoubtedly state the law, and are therefore not discredited in any sense by this opinion. The court, after

a careful consideration of the question, is of the opinion that the answer of appellants denying that John Gull, deceased, left any property in Millard county, was not a disclaimer of interest in the stock; that, at most, the denial was a negative pregnant by which defendants only denied that deceased left any property in Millard county, and by implication admitted that he left property somewhere else. Whether deceased left any property in Millard county may be wholly immaterial. It is sufficient to say that under the rules of correct pleading the defendants' denial should not be construed to be an admission that John Gull died without leaving any property. It would therefore, in the opinion of the court, be not only violative of the rules of good pleading, but likewise unjust to appellants, to treat the denial as a disclaimer of interest, as was erroneously done in our former opinion. Besides this, the right of appeal from the final judgment of the district court is a right guaranteed by the Constitution of the state, and we are reluctant to enter an order which would have the effect of depriving the party of such right as long as there is any serious doubt as to the propriety of the order. It follows that the contention of respondent that the appeal should be dismissed for the reasons above stated cannot be sustained.

This brings us to a consideration of the merits of the appeal.

Three complaints (one original and two amended) were filed in the case. A demurrer was entered against each complaint and overruled. In each instance exceptions were taken and error assigned. It is not necessary to consider these exceptions in detail. The objections generally were [2] trivial and untenable from any point of view. Allowance of amendments to the complaint was clearly within the discretion of the court, and defendants were not prejudiced in this regard; hence we are not disposed to encumber these pages with either a statement of the various questions presented or a discussion of their merits.

Appellants' pleading the statute of limitations in answer to the last amended complaint was without merit. The deceased, John Gull, died before the statute ran against the note. Letters of administration were issued, and an adminis-

trator appointed for his estate February 16, 1916. Plaintiff's last amended complaint, which made the administrator a party, was filed July 29, 1916, within one year after letters of administration were issued. The action was commenced in time. Comp. Laws Utah 1907, section 2890.

The complaint, as before stated, alleged the execution of the note by both William Gull and John Gull, and the assignment and delivery of the stock as security by John Gull, both of which allegations were denied. During the course of the trial plaintiff proved by defendant William Gull the execution of the note as alleged in the complaint and that the same had not been paid. The only material issue remaining was the delivery of the stock as security by John Gull. To prove this fact, plaintiff himself was sworn as a witness. Calling his attention to the certificate of stock, which had been marked as an exhibit, plaintiff was asked by his attorney if either of the defendants delivered it to him as security for the note. The question was objected to on the grounds that any transaction between plaintiff and John Gull was prohibited by statute. The objection was overruled and exception taken. Witness answered to the effect that John Gull brought him the certificate and delivered it to him at plaintiff's home. Plaintiff then commenced to relate a conversation with John Gull, and defendants objected on the ground that John Gull was deceased, and any conversation with him and plaintiff would be equally within the knowledge of both, and therefore incompetent. The question was withdrawn, and witness was then asked if he knew the signature which was indorsed on the certificate. He answered, "John Gull's." The answer was objected to by the defendants as not responsive and because witness had not shown himself qualified to answer. This objection was sustained. The witness was then asked if the signature was written in his presence and by whom. He answered, "Yes; by John Gull." The last question and answer were admitted without objection. Plaintiff then offered the certificate in evidence. Defendants objected on the grounds that there was no evidence of any transaction between plaintiff and John Gull whereby the certificate was

given as security for the note. The objection was overruled. Exception by defendants. The certificate was then read in evidence; whereupon defendants, for the purpose of making the record, objected to the introduction of the certificate for the reason that there was no evidence of any contract or agreement whereby John Gull agreed to deliver the certificate to the plaintiff as security for the note. Other objections were made, but they are immaterial. The court overruled the objection. Exception noted. The witness was then asked if the certificate was given him as security for the note. He answered, "Yes." He also stated that he was then the owner and holder of the note, and that no payment had been made thereon. After some further proceedings, immaterial to the issue presented here, plaintiff rested his case. Defendants then moved to strike out all the testimony of plaintiff as to any transaction with John Gull where the transaction was equally within the knowledge of John Gull and plaintiff. Defendants called the court's attention to the fact (as alleged by them) that plaintiff had made some rambling statements, and that other than this there was no evidence. Defendants insisted that all the testimony of plaintiff as to any transaction with John Gull should be stricken out. The court then answered that, as the court understood it, that objection had been sustained, and that there was no such evidence introduced. The court then informed defendants that they could not make a blanket motion in that way. Pursuing the matter further, the court stated that any conversation between plaintiff and John Gull might be stricken out. Defendants then moved for judgment, as far as the estate of John Gull was concerned, for the reason that there was no evidence to support the allegations of the complaint that John Gull pledged the certificate of stock as security. The court informed defendants that that was wrong and overruled the motion. Exception noted. The plaintiff then moved for judgment, at the same time waiving a deficiency judgment and stipulating to look to the sale of the stock alone in satisfaction of judgment. The court found the facts in favor of the plaintiff on the material issues, and rendered judgment for foreclosure of the security.

The record, as will be seen, is confusing, if not contradictory, as to just what the court intended in respect to the testimony to which defendants objected. While not attempting to copy the entire proceedings relating to this testimony, we have, nevertheless, endeavored to state its substance and effect so as to correctly reflect the record. There was no other testimony than that of the plaintiff offered to prove that the certificate was pledged as security for the note. The court, however, found that "John Gull, now deceased, on the 11th day of February, 1909, did assign, transfer, execute, and deliver by way of pledge or mortgage to the plaintiff, in Millard county," etc. Then follows a description of the certificate. This being the only issue as the case finally developed, and the court having found in favor of the plaintiff, the validity of the testimony objected to by defendants becomes of vital importance; in fact, it is the point on which the case turns, and is therefore entitled to serious consideration.

Comp. Laws Utah 1907, section 3413, so far as material here, provides, in effect, that a party in a civil action, where the adverse party sues or defends as administrator of a deceased person, is incompetent to testify as a witness as to any statement by, or transaction with, such deceased person where the statement or transaction must have been equally within the knowledge of the witness and such deceased person, except in certain cases mentioned. This provision of our statute, in one form or another, has been in force in the territory and state of Utah since long prior to 1888. It is found in all the compilations and revisions of our laws since that time, and has frequently come in review by this court. *Wood* v. *Fox,* 8 Utah, at page 401, 32 Pac. 48, construing Comp. Laws Utah 1888, section 3877; *Ewing* v. *White,* 8 Utah, 250, 30 Pac. 984; *Hennefer* v. *Hays,* 14 Utah, 324, 47 Pac. 90, in which the statute was the same in language as the present law; *Clawson* v. *Wallace,* 16 Utah, 300, 52 Pac. 9; *Rasmussen* v. *Canal Co.,* 40 Utah, 371, at page 383, 121 Pac. 741.

The foregoing cases are all in point to the effect that a party is incompetent as a witness to testify to any fact equally

within the knowledge of the witness and the deceased where the adverse party is one of the persons referred to in the statute.

As before stated, the one important question in the present case was whether or not the deceased, John Gull, pledged or mortgaged the certificate of stock in question as security for the note. Plaintiff alleged that decedent, Gull, gave him the stock as security. Gull's administrator and the other defendant jointly denied the allegation. Whether or not the stock was delivered to plaintiff by decedent, Gull, as a pledge for the payment of the note was a fact equally within the knowledge of both plaintiff and decedent, and we see no escape from the conclusion that the testimony was inadmissible under the statute referred to.

But it is contended by respondent that the objectionable testimony was stricken out. As already stated, the record is confusing, whether due to an imperfect report or to the fact that the court was not clear and concise in his rulings we are unable to determine, but in any event prejudicial error was committed in one form or another. If the testimony objected to was stricken out, what becomes of the finding of the court to the effect "that John Gull, deceased, did pledge and mortgage the stock to plaintiff to secure the note"? The only testimony whatever to support this finding is the testimony which respondent insists was stricken out. Without this finding the judgment of foreclosure is a nullity. There is no foundation upon which it can rest.

Respondents' contention that plaintiff's possession of the certificate of stock was prima facie evidence of title, and therefore sufficient to sustain the finding, cannot prevail. The possession of a certificate of stock duly indorsed, as this appears to have been, is, no doubt, prima facie evidence of ownership under some circumstances, and in a proper case might be sufficient to sustain a judgment. But in the present case plaintiff does not claim absolute ownership of the stock. He concedes by his complaint that the title is in the estate of John Gull, deceased, and that he is only holding it as security for the payment of the note.

4

The action is one in foreclosure, and he cannot be permitted to recover on any other theory in this proceeding.

The case will be remanded for further proceedings in the trial court. In view of the condition of the pleadings either or both parties may desire to amend them before proceeding with a new trial. The defendant, William Gull, one of the makers of the note, denied its execution in his sworn answer, and afterwards, at the trial, admitted that he did sign it both for himself and for his father, at his father's request. He also admitted that he received the consideration for the note, and that the same had not been paid. We deem it our duty to suggest that this kind of juggling with a solemn oath in a judicial proceeding, in a state where willful perjury is made a crime punishable by imprisonment in the penitentiary, fully justified the drastic criticism indulged in by respondent's counsel in his able brief. This animadversion upon the conduct of the defendant would, perhaps, be unjustifiable were it not for the fact that his turpitude in the matter referred to is beyond all question.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial, with instructions to the trial court to permit the parties, or either of them, if they so desire, to amend their pleading; appellants to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.